May it please the Court. My name is Vitaly Segal. I represent the petitioners, Vladimir VATYAN and Azatuhi Petrosyan. Our argument is that the immigration judge and the BIA thereafter erred in not granting the petitioners asylum for two reasons. First, the immigration judge was too stringent in his credibility finding. He used matters that don't go to the heart of the asylum claim to determine that the respondent was not credible. Second, the judge failed to allow certain evidence that would go to prove the petitioner's claim and the petitioner's fear of return to Armenia. He failed to allow those matters into evidence, despite the fact that this Court has ruled in Conn v. INS that documents can be authenticated by any means accepted by the Federal Rules of Evidence or civil procedure. The judge insisted that these documents were not authenticated based on 8 CFR. At the time, it was 287.3, but I believe now it's 1287.3. And for that reason, documents that went to show that all of the incidents that were How were they authenticated? They were authenticated through the testimony of the respondent. How does he know? Because they're his documents. He Did he issue the documents? He did not issue the documents, but the documents were issued to him in Armenia. These documents were then brought over to America. So the best person to authenticate those documents would be the petitioner who knew of the incidents, who obtained these documents. If somebody receives a letter, can they authenticate it as being from a given person just because they received it? If they received the letter, they can testify. They received it, but they can't demonstrate necessarily, and that testimony doesn't establish that it was actually sent by the person that purports to have sent it. True, but he's the best person. But these are official documents. He's not the official agency. All they can say is, I have these. Well, he has them, but that does not establish that they are official documents, does it? It can establish where he got them, and if he testifies that he got them from an official agency, then he would be in the best position to do so, requiring them to then be sent to the consulate for a stamp from a notary or to go to the U.S. That He can do all of that, but he didn't. First of all, doing that brings up an incredible hardship on a person who's here with relatively little resources to send documents to a country where he has no ties, where he has very little ability to do so, would not make – would be a hardship on the Petitioner. Did he make great efforts to do any of that? Well, he did not even have the ability to try. Well, how long was he in the United States before the IJ hearing took place? Before the IJ hearing, I believe it could be three or four years, Your Honor, without. So maybe you can make some kind of effort in the course of three or four years? But, yes, he could have. However, the point is that how would that make the documents more credible? Well, actually, the point may be how would that – those documents prove that he was credible. I mean, if the documents come in based on his say-so, and the whole issue in the case is whether he's credible, I'm not sure the documents are going to make any difference anyway. Well, the documents corroborate his statements. But, see, the documents are in only because he says what they are. And if he's not credible or deemed credible, the – there's no reason for the – for the Immigration Court to think the documents are anything other than fabrications. Because they're there simply because he says they are. You know, you can't really corroborate your own credibility. Yes, but – Don't say yes. Don't say yes. But sure you can. I'm sorry, Your Honor? Sure you can corroborate your own credibility. You can testify of the circumstances of how the document came into your possession. And if it is accepted as authentic, then that document corroborates. It's not your document. It's a document you received. Absolutely, Your Honor. Any – Let me ask – Don't say yes, but. Let me ask a more basic question. Was this a discretionary call on behalf of the IJ about whether or not to let these documents in? Was it a discretionary call? Well, Conn v. INA states that the court can accept documents by any means, through any means of authentication. So while it was discretionary, I think the court's – the court's previous cases have stated that the court has to allow certain documents to come in. They can't insist on – on making somebody go through – basically jump through a bunch of hoops that doesn't make these documents any more credible. What would make them credible, as the court has already pointed out, is this person has received these documents. He corroborates it with his own testimony. We're looking at these documents as foreign documents, other than the 1999 death certificate, which is an official public document. The other three were just letters, correct? No, Your Honor. I believe the documents were – there were tabs three through six in the submission, and they were documents from the Ministry of Internal Affairs. They were police documents, and they were also documents from the commission on – the Armenian Commission on Refugees stating that they can't take the petitioner and his son at the time. So they were all government documents, but they go to corroborate the petitioner's story. And as far as – What's the evidence as to how he came in possession of the Ministry of Internal Affairs April 2000 document exhibit – well, I don't know what the exhibit number is. It's – I guess it's tab six or seven. This is the document that states that he had been in prison. That he had been in prison? Yes. It's 256 on the ER. I believe his testimony was that he went and asked for the police station for a certificate that he was being – he was held in custody. Before he left Armenia? I believe so. Okay, so he was able to get that document from them, and he had it translated, apparently. Is that right? Translated – yes, I mean the translation – Translated in English. That was done over in the United States, according to the notary stamp. Now, as Judge Clifton inquired, what efforts were made to try to get the certification from Armenia to show at least an effort to try to do so, as opposed to just putting the document in? No efforts, Your Honor, because of the – there's a high probability that if you send documents to Armenia to get authenticated, original documents, which is what's required to authenticate them, you'll never get them back. All right. So was this an original document that he had? Absolutely, Your Honor. It was an original document that was submitted. As far as the credibility determination by the judge, the judge determined based on things that don't go to the heart of the asylum claim, that don't try to enhance the asylum claim, that the Respondent wasn't credible. It should also be noted that at the time of the testimony, the Respondent was 70 years old. The judge picked on things as such as the date of the arrest, whether or not it was in January or in December, basically a month apart. The actual stay was approximately three months in prison, while he said it was two months. There was an issue as to what was written on a note five years ago when the Petitioner was in custody. And lastly, there's things that the judge said that were implausible. These were not based on any type of facts, any type of evidence that was submitted to the record. It was just based on speculation that the judge said that he doesn't believe things could happen that way. Well, the judge had no right to make that determination as such. If it pleases the Court, I'd like to save the remainder of my time for rebuttal. Sure, you may. Thank you. Counsel? Welcome back. Yes, Mr. Court. Thank you. Mollie Debecher, Your Honor, representing Alberto Gonzalez, the Attorney General of the United States. The evidence and record does not compel the conclusion that Mr. Vitaean testified credibly. Well, it may, depending on what happens with his document. I'm sorry, Your Honor, which document? The document we've been talking about, at least the document that I called specifically to counsel's attention. The I.J. particularly says that there's no evidence that he was in prison, and that document would establish that. So I'm trying to understand the authentication process here. Your Honor, the immigration judge recognized and enunciated the proper standard and gave Mr. Vitaean ample opportunity, 10 pages in the transcript, questioning Mr. Vitaean, how did you get these documents? The immigration judge reiterated, we want to know how you got these documents. And I see nothing in the record where he responded to that question. He testified to what he did with the documents, who he gave them to, how this person that he gave them to got them into the United States. Chain of custody questions, but, Your Honor, I see nothing in the evidence about how he got the documents. Well, he had the document. He had it to present, right? So didn't the IJ – I thought the IJ said you have to go to the – you have to get it certified under 287.6 to prove it up and go to the consul of our meeting. The immigration judge said that was one way to get them authenticated, but the immigration judge acknowledged that they could be authenticated in any way that's allowed by the law. But, Your Honor, this Court has held that documents, they can be authenticated in any way, but they must be demonstrated to be authentic. And it's simply not in the record that they are what they say they are, that they came from who he says they came from. There's no evidence that he didn't alter them in some way. It's simply not there, Your Honor. Okay. He had three chances before coming to this Court to demonstrate that he was eligible for asylum. First, before the asylum officer who took his interview when he applied for asylum. Second, an oral testimony before the immigration judge. And third, before the Board of Immigration Appeals. And in each case, he did not satisfy his burden. The immigration judge found that there were elements in his testimony that made it very difficult to know whether he had ever been in prison or not. And because that was a large part of his claim, it was necessary that he establish that claim. The immigration judge did not believe Mr. Vitaean's testimony with regard to how he got out of prison. According to Mr. Vitaean, he was imprisoned in a high-security prison that was run  by the military. It had been formerly known as a KGB prison, as a place where enemies of the state were held. He testified that he was beaten and tortured and starved every day for a certain amount of time. And then he said that at some point, there was one of the soldiers who was guarding him during this period of beating and tortures. He was able to give this soldier a note, and the soldier was able to deliver the note to a friend of his who worked in a nearby restaurant, and that friend was then able to contact the humanitarian organizations who secured his release. The immigration judge did not believe that that was plausible. And what did the immigration judge base that disbelief upon? He based it on its implausibility, Your Honor. Well, I understand that, but implausible things happen every day. Is the fact that the immigration judge, who really doesn't afford to be an expert on Armenian prison systems, is he in a position to say, hmm, that just doesn't sound right to me, and that's enough? He was in a position to say, I don't believe it. I don't believe your testimony. Once again, Your Honor ---- You have case law that says that the I.J. is allowed to lean back and say, I don't believe it, and that's enough? Yes, Your Honor. That's enough. He has to specifically say those items that he does not believe. But once again, I'll say, Your Honor, that the alien has the burden of establishing his case. And if the case is not plausible, if the immigration judge leaves the testimony or leaves the hearing with not really knowing whether ---- I just don't believe ---- I don't know whether he was a prisoner or not. Well, it is a recurring problem in immigration cases that the specific testimony about what happened to this individual comes solely from that individual, because nobody else is in the room who can speak to it. I'm not sure our case law says the I.J. can lean back and say, I don't believe it, give whatever reason, and that's the end of it. In fact, our case law seems to say that you have to deal specifically with the testimony or the credibility of the alien applicant at that point, and justify determination that that testimony is not credible on something more than it just doesn't sound right to me. Well, Your Honor, the case law says that the immigration judge has to weigh the evidence. If he finds inconsistencies or things he doesn't believe, he has to specify them. And the case law in this Court says it has to go to the heart of the claim. But the case law does not say that the alien will be deemed credible. The case law says that the alien must prove his case. But that the immigration judge can't rely upon his own speculation to justify an adverse credibility determination. Your Honor, it's not speculation. He's appointed to be the trier of fact in this case. And if I could revert to the question, I'm not so sure it's that simple, because that would suggest that because he's the trier of fact, he's allowed to speculate. And I take it you acknowledge that our case law, which is not always crystal clear in a straight line, does frequently reject adverse credibility determinations as being based upon speculation on the part of the immigration judge. So here I turn to how an Armenian prison operates with the immigration judge not likely and certainly not attesting to having any expertise in that subject. And he just says to him, that doesn't sound right to me. Where in fact, there is in US history plenty of instances of prisoners and prison guards who form relationships and prisoners who've gotten out because of assistance from prison guards. So I'm just not so sure that I can be persuaded by the notion of that seems unlikely to me as being all that compelling a reason to say that the testimony is not credible. Well, Your Honor, the standard of proof is not that it's compelling to say that it's incredible. The standard is it's compelling to say that it is credible. Well, I take it you've read a good number of our cases that have rejected adverse credibility determinations as being based on speculation to understand that there's at least some risk of this sounding a whole lot like speculation on the part of the IJ. Well, Your Honor, it's the problem that you mentioned, that much of the testimony comes only from the alien, is balanced against the problem of searching for the truth. And the Congress has decided that in those conflicting problems, the immigration judge, as the fact finder, is allowed a great deal of discretion. He must, for this Court, he must enunciate why he found things uncredible. But it can be overturned only if something in the evidence compels that Mr. Vitaean was testifying credibly. There were other inconsistencies. This description of how he got out of prison, which the immigration judge found to be implausible, was not the only reason the immigration judge didn't know whether his testimony was ever happened. He also didn't believe the contents of the note, and he's pointed to a specific inconsistency in this case between the testimony that Mr. Vitaean gave while he was in his hearing as opposed to the statement that he provided with his immigration asylum. And he stated that the note contained three sentences. In his asylum application, he stated that the note read, I am not guilty. I don't believe that I can prove it. Whereas, in his hearing, he said the second sentence was, I don't believe I can survive here. The immigration judge concluded that in a note so incredibly crucial, so important to Mr. Vitaean's circumstances, that he would remember what he said in that note. And there were other items of inconsistencies, Your Honor. There were inconsistencies in the timing of the alleged imprisonment in the statement of his immigration statement. He said he was arrested on January 26, 2000, whereas in his testimony, he emphatically said he was arrested on December 26, 1999. There was an inconsistency in the his two statements regarding the length of his imprisonment. In his asylum application, he said he was in prison for two months. And in his testimony before the immigration judge, he said he was in prison for more than three months. Another instance that the immigration judge found implausible was that when Mr. Vitaean said he provided a photo for his visa that showed him clean-shaven, and then he appeared at the consulate to pick up and to have his visa interview, and he had a heavy beard and a heavy mustache, and he testified that he was not asked a single question about his appearance or about anything, the immigration judge did not believe that. And there's nothing that compels a counterclaim. Counsel, do you think, coming back, I know you're over time, but I just want to, given what you've gone through, if the document that does attest, does on its face anyway, say that he was in prison, why wouldn't that be enough to remand it to the IJ to take another look at it if, in fact, the document was adequately or could have been adequately authenticated by the testimony of Mr. Vitaean? You're saying that the immigration judge, in effect, as he did, he recognized that it could be done by any manner and cited to our con case, but it's not clear when he gets down to that document why he decides he's not accepting Mr. Vitaean's characterization of the document. I mean, we even have a case, and that's what I've been trying to understand here, Cordon de Rano says if it's an original, Section 287.6 doesn't even apply to it, it only applies to copies. And I'm not sure whether, I mean, that's, whether that's, that is, if that case is good law, it's binding on us, this was an original document. So now I'm kind of wondering why, what was the impediment to accepting at least that document as an original document? Your Honor, I'm not sure that the record shows that it was an original document. I will point out that there were inconsistencies even on that document with regard to his testimony that he was taken to two different prisons, his testimony with regard to the date. And also, I would repeat, Your Honor, that the document was not authentic. Well, it wasn't found authentic. That's the whole crux, I guess. Okay. Well, thank you very much. Your Honor, if we accept the judge's ---- Is there evidence in the record that this was an original? Your Honor, I would have to, I apologize, I would have to go through the record. But all documents that we submit are original documents. If that's not something that in practice would happen if I only had a copy, it would not go into the record at all. Because especially nowadays with different forensics testings that the government requires of documents, we wouldn't submit photocopies of documents. We would ask, where is the original? You know, where did you get this copy of? So without going through the record, I can attest that with all certainty that this was an original document. The criteria of the immigration judge did not allow anybody, no matter what kind of testimony, what kind of evidence they would have presented, to be granted asylum. He held the, responded to a standard of credibility that no person can ever meet who can tell you what happened in January and December. Well, is imprisonment such a common event in this person's life that you can lose a month? In light of everything that had happened to him up until then, yes, Your Honor. I mean, his wife was killed, his son was killed. He was taken from the country where he was born and moved across the border by soldiers. Then he was evicted from the hotel where he was staying. Then he was beaten and arrested. It could be that, yes, well, a normal person, if this is the only thing that happens to them in their life is the fact that they get arrested, maybe they know the exact date. But a 70-year-old man who's had all this happen to him in the last 10 years. I confess, 70 isn't quite as far away and as old-sounding as it used to be for me. So be careful with that. No, Your Honor, and it's not. But as far as somebody's memory and remembering exact dates, I couldn't tell you the last time I argued in front of this Court, but I know it was sometime last year. And that's just the way the mind works. People don't remember the exact dates. It was in March. Unfortunately, it wasn't as traumatic as prison, I guess, although we're trying. Thank you, Your Honor. Thank you for your time, Your Honor. All right, thank you. All right, the case, the Tanyan, is submitted. Thank you, counsel. Next case, this is a test of my ability to pronounce Armenian names today, I'm afraid. So I apologize if I mispronounce it, but it's
judges: Fisher, Clifton, Martinez